IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal No. 10-234 |
| | ) | |
| MARK JULIANO, | ) | |
| | ) | |
| Defendant. | ) | |

O R D E R

AND NOW, this 11th day of February, 2011, upon consideration

of Defendant's "Motion for Revocation or Amendment of the

Detention Order and Request for New Hearing" (document No. 24)

filed in the above-captioned matter on December 29, 2010, his

Supplemental Brief, the Government's Response thereto and upon

further consideration of the transcript of the detention hearing

held on December 17, 2010, the Detention Order issued by

Magistrate Judge Cathy Bissoon, and the evidence presented at the

hearing held before this Court on February 3, 2011,

IT IS HEREBY ORDERED that said Motion is GRANTED, the Court

finding that:

1.   18 U.S.C. § 3142(e) provides that the Court shall order a

defendant to be detained before trial if the Court finds that no

condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other

person and the community.

2. The Government bears the burden of establishing by a preponderance of the evidence that the defendant poses a risk of flight, see United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986), and must establish by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. See 18 U.S.C. § 3142(f)(2)(B).

3. In determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community, this Court is to consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings and whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's

release.  See 18 U.S.C. § 3142(g).

4.  In this case, Defendant is charged with Interstate Stalking, in violation of Title 18, United States Code, Section 2261A(2).

5.  The instant charge arises from incidents which occurred from in and around August 2010 and continuing until on or about December 8, 2010.

6.  Specifically, it is alleged that Defendant used a computer to send harassing and threatening email messages across state lines, causing the recipient substantial emotional distress and placing the recipient in reasonable fear of serious bodily injury to her, a friend and her immediate family.

7.  There is probable cause to believe that Defendant committed the instant charged offense as alleged, and the record indicates that there is substantial evidence against Defendant.

8.  In December 2008, Defendant and his wife, Lisa Lisanti, were divorced.  After the divorce, Defendant and his ex-wife disputed the custody of their four children.

9.  Defendant suffers from Bipolar Disorder.  In or about April 2010, Defendant began to taper off of his psychiatric medication, and his condition deteriorated.

10.  On or about August 18, 2010, Defendant sent two email messages to Ms. Lisanti and her attorney, in which he threatened his ex-wife's life and the lives of her father, Tony Lisanti, and

her friend, Kathy Barge. Defendant also threatened to take his children out of Pennsylvania and even out of the country. In another email message that he sent to several people, including his children, Defendant implied that he was suicidal.

11. On August 24, 2010, Ms. Lisanti obtained a protection from abuse order from a court in Allegheny County, which barred Defendant from having any contact with his ex-wife or their children. In addition, on the same date, a judge authorized a criminal complaint against Defendant, charging him with two misdemeanors.

12. Between August 27 and August 30, 2010, Defendant was involuntarily hospitalized for psychiatric treatment. Defendant agreed to resume taking his medication, and he was discharged.

13. On October 1, 2010, while he was incarcerated at the Allegheny County Jail on the state misdemeanor charges, Defendant was evaluated by Dr. Warren Mebane, who was convinced that Defendant's Bipolar Disorder was in remission.

14. After his release from state detention on October 8, 2010, Defendant again stopped taking his medication and traveled to California. As a condition of his release from state custody, Defendant had surrendered his passport. Nevertheless, Defendant proceeded to fraudulently obtain a replacement, representing that his passport had been stolen. Defendant describes this incident as "terribly foolish."

15. On December 7, 2010, Defendant was arrested and temporarily detained. Defendant's detention hearing was held on December 17, 2010, and Magistrate Judge Bissoon issued her detention order.

16. While in custody between December 7, 2010 and December 27, 2010, Defendant did not receive his medication.

17. On December 18, 2010, John Sorrentino submitted a statement to prison officials, in which he alleged that Defendant offered him money to kill Defendant's ex-wife. While Defendant denied that this incident took place, his psychiatrist was "skeptical" of Defendant's explanation, noting that Defendant was suffering from his Bipolar Disorder without the benefit of medication at the time and that his recollection of what happened would have been impaired.

18. Defendant is well-educated and has a history of significant entrepreneurial success. Defendant is involved in several business ventures, which are located around the country. Defendant has significant funds available to him.

19. Joseph Maroon, a neurosurgeon, is Defendant's friend and business partner. Dr. Maroon testified that Defendant suffers from manic depressive disorder and that, without medication, he was capable of "aberrant behavior." Dr. Maroon never saw Defendant act in a violent manner.

20. Defendant has no prior convictions, and he has

5

significant ties, family and otherwise, to the Western District of Pennsylvania.

21.   Since December 27, 2010, Defendant's Bipolar Disorder has been controlled by medication, including Lithium and Wellbutrin.

22.   On January 24, 2011, a psychiatrist, Vincent A. Paolone, evaluated Defendant.   Prior to this evaluation, Dr. Paolone reviewed Defendant's medical records.   Dr. Paolone opined that Defendant is not a threat to himself or others as long as he takes his prescribed medication.   In Dr. Paolone's opinion, when Defendant was not medicated, his judgment was impaired, but, while he was capable of "shooting off his mouth," he was not violent.

23.   The Court concludes that the Government has not met its burden of proving that no condition or combination of conditions of release will reasonably assure the appearance of Defendant as necessary or the safety of any other person and the community. The Court concludes that, after carefully considering the evidence, including evidence that was not available to Magistrate Judge Bissoon, and the factors set forth in Section 3142(g), pretrial detention is not warranted.

24.   The Court is aware of the fact that the last time Defendant was released from custody he stopped taking his medication.   However, the Court finds that there are conditions that can be imposed that will insure that Defendant will not stop

taking his medication again, as set forth in the Court's Order

Setting Conditions of Release, which is attached hereto as Exhibit

A.

25. In addition, the Court finds that there are conditions

that can be imposed that will insure that Defendant is not a

serious risk of flight, such as requiring electronic monitoring

and mental health treatment, as set forth in the Court's Order

Setting Conditions of Release.

26. In addition, in order to assure Defendant's appearance

at the Court's proceedings in this matter, Defendant must provide

a $100,000.00 cash bond.

Therefore, IT IS HEREBY ORDERED that the United States

Marshal shall bring Defendant as soon as possible to the Court to

execute the Appearance Bond and sign the Acknowledgement of

Defendant regarding the conditions of his release. Once these

documents are executed, the Court will sign and enter the Order

Setting Conditions of Release.

FURTHER, IT IS HEREBY ORDERED that Defendant's Sealed Motion

(document No. 19) is DENIED as moot.

> s/Alan N. Bloch
> United States District Judge

ecf:      Counsel of record
           U.S. Probation Office
           U.S. Pretrial Services
           U.S. Marshal
           Finance Department, Clerk of Courts